Magomed Gusein Gasanov (Cal. SBN 368130)
MGG Law, PC
468 N. Camden Dr., Ste. 208
Beverly Hills, CA 90210
Tel.: (213) 642-9978
Email: gasanov@mgg.law

*Attorney for Petitioner Evans Kobla Agbemenya*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| EVANS KOBLA AGBEMENYA,<br><br>Petitioner,<br><br>v.<br><br>ERNESTO SANTACRUZ, JR., Field Office Director, Los Angeles Field Office, U.S. Immigration and Customs Enforcement; DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of Homeland Security; TODD BLANCHE, Attorney General of the United States; WARDEN, Adelanto ICE Processing Center, in their official capacities,<br><br>Respondents. | Case No. 5:26-cv-0630<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>A245-021-088 |

# TABLE OF CONTENTS

I. INTRODUCTION ........ 3
II. CUSTODY, JURISDICTION, AND VENUE ........ 3
III. PARTIES ........ 5
IV. EXHAUSTION ........ 6
V. STATEMENT OF FACTS ........ 6
A. Entry and Release on Recognizance (2023) ........ 6
B. Asylum Application, Work Authorization, and Life in the Community (2023–2026) 7
C. The September 24, 2026 Arrest and the District Attorney's Declination ........ 8
D. ICE Imposes GPS Monitoring Without Notice or Hearing (September 28, 2026) ........ 8
E. Re-Detention Without Notice or Hearing (September 29, 2026) ........ 9
VI. FIRST CLAIM: PROCEDURAL DUE PROCESS — RE-DETENTION WITHOUT NOTICE OR HEARING ........ 9
A. Petitioner Has a Protected Liberty Interest ........ 10
B. The Mathews Factors Required a Hearing Before Re-Detention ........ 12
VII. SECOND CLAIM: PROCEDURAL DUE PROCESS — IMPOSITION OF GPS MONITORING WITHOUT NOTICE OR HEARING ........ 14
A. GPS Monitoring Is an Additional Restraint on Protected Liberty ........ 15
B. ICE Imposed That Restraint Without Notice, Individualized Findings, or Neutral Review ........ 17
C. Under Mathews, Those Procedures Were Constitutionally Inadequate ........ 17
VIII. REMEDY ........ 18
A. Release on the 2023 Order of Release on Recognizance, Without GPS Monitoring 19
B. A Limited Permanent Injunction Is Warranted ........ 20
PRAYER FOR RELIEF ........ 21

## I. INTRODUCTION

1. Petitioner Evans Kobla Agbemenya is a citizen of Ghana. In May 2023, he crossed into the United States in Arizona and surrendered to immigration officers. DHS placed him in removal proceedings and released him on his own recognizance. He applied for asylum, and USCIS authorized him to work through June 2029. He has no criminal record. Before his re-detention, his removal case was set for an individual hearing in February 2027.

2. On September 24, 2026, after a dispute with his girlfriend, Los Angeles police arrested Petitioner. He denies the allegations. On October 14, 2026, the District Attorney's Office reviewed the case and declined to file charges.

3. Before prosecutors made that decision, ICE acted twice on the bare fact of the arrest. On September 28, 2026, ICE called Petitioner in to its office in downtown Los Angeles and fitted him with a GPS ankle monitor. ICE told him to come back the next day. When he returned as directed on September 29, 2026, ICE took him into custody. On neither day did ICE give him written notice, a statement of reasons, or a hearing. He is now confined at the Adelanto ICE Processing Center, without the CPAP machine he uses to treat chronic obstructive sleep apnea.

4. The Due Process Clause of the Fifth Amendment does not allow the government to revoke a person's conditional liberty this way. Petitioner asks the Court to order his immediate release on the conditions in his May 20, 2023 Order of Release on Recognizance, without GPS monitoring. He also asks the Court to bar re-detention, or re-imposition of electronic monitoring, without notice, a hearing, and an individualized justification.

## II. CUSTODY, JURISDICTION, AND VENUE

5. Petitioner is in Respondents' physical custody at the Adelanto ICE Processing Center in Adelanto, California. Ex. E. He is "in custody under or by color of the authority of the United States" and "in violation of the Constitution." 28 U.S.C. § 2241(c)(1), (3).

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241, 28 U.S.C. § 1331, and Article I, § 9, cl. 2 of the Constitution (the Suspension Clause). Federal courts have habeas jurisdiction to review the lawfulness of civil immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

7. No provision of 8 U.S.C. § 1252 strips jurisdiction over this petition. Petitioner does not challenge a removal order, the decision to commence proceedings, or the execution of a removal order. He challenges only the constitutionality of his present detention and of the conditions on which Respondents would release him. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (plurality) (§ 1252(b)(9) does not bar detention challenges); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (§ 1252(g) is limited to three discrete actions); *Betancourt-Martinez v. ICE*, No. 5:26-cv-02542-KES, 2026 U.S. Dist. LEXIS 217677, at *14–15 (C.D. Cal. Sept. 22, 2026) (§ 1252(g) does not bar due process challenges to re-detention and supervision conditions). Section 1226(e) likewise does not bar constitutional claims or questions of law. *Demore*, 538 U.S. at 516–17; *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011).

8. The Court may grant declaratory and injunctive relief ancillary to the writ under 28 U.S.C. §§ 2201–02 and 2243, and the All Writs Act, 28 U.S.C. § 1651. Petitioner asks that any order to show cause under § 2243 direct Respondents to identify the statutory provision they contend authorizes his detention, state the specific condition of release he allegedly violated and the facts supporting that claim, and lodge the arrest warrant, the Form I-213 for the September 29, 2026 arrest, any record of the decision to place Petitioner on GPS monitoring on September 28, 2026,

Petitioner's Alternatives to Detention enrollment records, any information ICE received about the September 24, 2026 arrest, and any record of the decision to revoke his release. *See Asihene v. Blanche*, No. 2:26-cv-01249, 2026 U.S. Dist. LEXIS 170211 (D. Nev. July 31, 2026); *Shire v. ICE*, 2026 U.S. Dist. LEXIS 176288 (D. Nev. Aug. 7, 2026).

9. Venue is proper in this District because Petitioner is confined in San Bernardino County, within the Central District of California. *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004); 28 U.S.C. § 1391(e). The Eastern Division is the proper division because Adelanto lies in San Bernardino County.

## III. PARTIES

10. Petitioner Evans Kobla Agbemenya, A245-021-088, is a native and citizen of Ghana born in 1995. He is detained at the Adelanto ICE Processing Center. Ex. E.

11. Respondent Warden of the Adelanto ICE Processing Center is Petitioner's immediate physical custodian and is named in his or her official capacity.

12. Respondent Ernesto Santacruz, Jr. is the Field Office Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations, which has administrative jurisdiction over Petitioner's detention. He is a legal custodian of Petitioner and is named in his official capacity.

13. Respondent David J. Venturella is the Acting Director of ICE. He is a legal custodian of Petitioner and is named in his official capacity.

14. Respondent Markwayne Mullin is the Secretary of Homeland Security. He is responsible for the administration of the immigration laws and is a legal custodian of Petitioner. He is sued in his official capacity.

15. Respondent Todd Blanche is the Attorney General of the United States. He oversees the Executive Office for Immigration Review, including the Immigration Courts and the BIA, and is named in his official capacity.

## IV. EXHAUSTION

16. No statute requires exhaustion before a § 2241 petition challenging immigration detention. Any exhaustion requirement is prudential, and the Court may waive it where administrative remedies are inadequate or futile, or where requiring exhaustion would cause irreparable injury. *Laing v. Ashcroft*, 370 F.3d 994, 998, 1000 (9th Cir. 2004); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

17. No adequate administrative remedy exists. No immigration judge has reviewed Petitioner's custody, and no custody hearing has been scheduled (¶ 43).

18. Even a bond hearing would not supply the process that was due. It would require Petitioner, from detention, to prove that he is neither a danger nor a flight risk, *see* 8 C.F.R. § 1236.1(c)(8); *Matter of Guerra*, 24 I&N Dec. 37, 38 (BIA 2006); *Matter of Adeniji*, 22 I&N Dec. 1102, 1113 (BIA 1999), after ICE has already taken his liberty without making any showing at all. Neither an immigration judge nor the Board can adjudicate the constitutional claims raised here.

19. Requiring exhaustion would also cause irreparable injury. Each day of unconstitutional confinement is a loss of liberty that cannot be restored after the fact. Petitioner is also being held without the CPAP machine he needs for chronic obstructive sleep apnea, and the facility physician has recorded concern about his apneic episodes (¶ 42).

## V. STATEMENT OF FACTS

### A. Entry and Release on Recognizance (2023)

20. Petitioner is a native and citizen of Ghana, born in 1995. Ex. E at 1.

21. In May 2023, Petitioner entered the United States on foot in Arizona and surrendered to immigration officers.

22. On May 20, 2023, a U.S. Border Patrol official issued Petitioner a Form I-220A, Order of Release on Recognizance. Ex. A. The order states that Petitioner had "been arrested and placed in removal proceedings" and that he was "being released on [his] own recognizance" on the conditions listed. *Id.* A second version of the order, on ICE Form I-220A, bears the same date and the same official's name. Ex. B.

23. The order required Petitioner, among other things, to report for any hearing or interview as directed; to report in person to ICE's Non-Detained Unit at 300 North Los Angeles Street, Room B17, Los Angeles, beginning June 6, 2023; not to change his residence without written permission; not to violate any local, State, or Federal law; and to assist DHS in obtaining travel documents. Ex. A. Neither version of the order required electronic monitoring. On ICE's version, the box conditioning release on enrollment in Alternatives to Detention and electronic monitoring is unchecked. Ex. B.

24. DHS placed Petitioner in removal proceedings before the immigration court, which docketed his case on June 20, 2023. Ex. F.

**B. Asylum Application, Work Authorization, and Life in the Community (2023–2026)**

25. After his release, Petitioner applied for asylum. That application remains pending.

26. On June 25, 2024, USCIS approved Petitioner's application for employment authorization under category (c)(8), which applies to noncitizens with pending asylum applications. 8 C.F.R. § 274a.12(c)(8). The authorization is valid from June 24, 2024 through June 23, 2029. Ex. C.

27. Before his re-detention, Petitioner's removal proceedings were set for an individual hearing in February 2027.

28. From May 2023 until September 2026, Petitioner lived in the community under the conditions of his release. ICE took no action to revoke that release during those three years.

29. Petitioner has no criminal record. He has never been convicted of any offense.

30. Petitioner has chronic obstructive sleep apnea, for which he uses a CPAP machine. Ex. E at 1–2. He had been scheduled for an outside sleep study on October 1, 2026 to re-titrate his CPAP machine. *Id.* at 1.

**C. The September 24, 2026 Arrest and the District Attorney's Declination**

31. On September 24, 2026, after a dispute with his girlfriend, who called the police, Los Angeles Police Department officers arrested Petitioner. Petitioner denies the allegations.

32. On October 14, 2026, an officer of the LAPD Olympic Division reported that "the District Attorney's Office ha[s] reviewed the case and ha[s] declined to file charges against Mr. Agbemenya." Ex. D.

33. No charge has been filed against Petitioner, and he has not been convicted of any offense.

**D. ICE Imposes GPS Monitoring Without Notice or Hearing (September 28, 2026)**

34. On September 28, 2026, ICE called Petitioner in to its office in downtown Los Angeles. He appeared as directed.

35. At that appointment, ICE fitted Petitioner with a GPS ankle monitor. ICE apparently did so because it had received information about the September 24, 2026 arrest.

36. ICE gave Petitioner no written notice of the reason for the new restraint, no statement of any condition of release he had allegedly violated, no disclosure of the information it relied on, and no opportunity to respond before a neutral

decisionmaker. No one made an individualized finding that electronic monitoring was needed to address a risk of flight or danger.

37. ICE directed Petitioner to return the next day.

**E. Re-Detention Without Notice or Hearing (September 29, 2026)**

38. On September 29, 2026, Petitioner returned to ICE's office as directed, wearing the monitor ICE had placed on him the day before. ICE took him into custody.

39. ICE gave Petitioner no written notice that his release was revoked, no written statement of the condition he allegedly violated or the facts supporting that claim, no disclosure of evidence, and no opportunity to respond before a neutral decisionmaker. ICE gave him no reason for the change in his custody.

40. Nothing occurred between September 28 and September 29, 2026.

41. ICE transferred Petitioner to the Adelanto ICE Processing Center, where he remains. Ex. E. His removal proceedings have been transferred to the Adelanto Immigration Court. Ex. F. His individual hearing is no longer on calendar, and no hearing is currently scheduled. *Id.*

42. At Adelanto, Petitioner is without his CPAP machine. Ex. E at 1. In a note dated October 4, 2026, the facility physician recorded that, according to Petitioner's roommates, he has "prolonged period[s] of apnea while sleeping" and "wakes up gasping for air." *Id.* The physician referred him to a sleep lab again, on an expedited basis, and wrote: "I have concern due to his episodes of sleep apnea and [being] awaken[ed] gasping for air." *Id.* at 2.

43. No neutral decisionmaker has reviewed Petitioner's re-detention or the GPS monitoring imposed the day before it, and no such review is scheduled.

## VI. FIRST CLAIM: PROCEDURAL DUE PROCESS — RE-DETENTION WITHOUT NOTICE OR HEARING

44. Petitioner incorporates paragraphs 1 through 43.

45. The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." Its protection extends to every person in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment . . . lies at the heart of the liberty that Clause protects." *Id.* at 690. A procedural due process claim proceeds in two steps: whether the petitioner holds a protected liberty interest, and, if so, what procedures are required before the government may deprive him of it. *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022); *G.A. v. Santacruz*, No. 5:26-cv-05538-RAO, Dkt. 11 at 2–3 (C.D. Cal. Oct. 9, 2026). Respondents deprived Petitioner of a protected liberty interest without notice and without a pre-deprivation hearing (¶¶ 38–43).

**A. Petitioner Has a Protected Liberty Interest**

46. A person released from custody on conditions holds a liberty interest that "includes many of the core values of unqualified liberty," and its termination "inflicts a grievous loss." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). That interest cannot be revoked without notice and a hearing. *Id.* at 485–89; *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Young v. Harper*, 520 U.S. 143, 147–49 (1997).

47. Courts in this Circuit apply these principles to noncitizens whom ICE released and then re-arrested. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969–70 (N.D. Cal. 2019); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (release creates "an implicit promise" that liberty will be revoked only for violation of its conditions (quoting *Morrissey*, 408 U.S. at 482)). Courts in this District now consistently find a protected liberty interest on such facts. *G.A.*, Dkt. 11 at 3; *Khushvaktov v. Santacruz*, No. 5:26-cv-04539-AJR, Dkt. 11 at 6–7 (C.D. Cal. Aug. 24, 2026); *Bekhoev v. Marin*, No. 5:26-cv-00206-RAO, Dkt. 25 at 7–9 (C.D. Cal. Apr. 28, 2026). As Judge Scott recently put it, "for immigrants like Petitioner—who were previously released by DHS and who have resided in this country for many

years—due process entitles them to a hearing before they are re-detained." *Betancourt-Martinez*, 2026 U.S. Dist. LEXIS 217677, at *15–16 (collecting cases).

48. Petitioner holds that interest. DHS released him in May 2023, and for more than three years he lived in the community under that release, with federal work authorization valid through 2029 (¶¶ 22–28). *See Bekhoev*, Dkt. 25 at 8–9. His presence was also contemplated by statute: Congress authorizes employment for asylum applicants while their claims are pending, 8 U.S.C. § 1158(d)(2), and excludes that time from unlawful presence, 8 U.S.C. § 1182(a)(9)(B)(iii)(II). USCIS's issuance of (c)(8) employment authorization reflects that his application is neither frivolous nor abandoned (¶ 26). *Khushvaktov*, Dkt. 11 at 6 n.1 (citing 8 C.F.R. § 208.7); *see Vilela v. Robbins*, 813 F. Supp. 3d 1144, 1153 (E.D. Cal. 2025).

49. *DHS v. Thuraissigiam*, 591 U.S. 103 (2020), does not change this result. *Thuraissigiam* addressed what process a noncitizen apprehended near the border receives regarding his application for admission. It did not address the physical re-detention of a person whom DHS released into the interior and left there for more than three years. Petitioner does not seek admission through this petition; he challenges the government's withdrawal, without process, of liberty the government itself conferred.

50. Whatever authority ICE invokes to revoke release, that authority operates within the Constitution's limits. Re-arrest of a released noncitizen generally requires a material change in circumstances. *See Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981); *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). No such change exists. The only circumstance ICE had was an arrest on an accusation Petitioner denies (¶ 31), which the District Attorney's Office has since declined to charge (¶ 32). An arrest is not a conviction, and it is not proof that Petitioner violated the condition that he obey the law; it is an accusation, and testing contested accusations is what the *Morrissey* hearing is for. ICE's own conduct confirms the point. On September 28, ICE responded to the arrest by placing Petitioner on GPS

monitoring and sending him home (¶¶ 35–37). Nothing happened overnight (¶ 40). He came back the next day as directed, and ICE detained him (¶ 38).

### B. The Mathews Factors Required a Hearing Before Re-Detention

51. The process due before a deprivation of liberty is determined by balancing (1) the private interest affected, (2) the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards, and (3) the government's interest, including the burden of additional procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Ninth Circuit applies *Mathews* to immigration detention. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." *Betancourt-Martinez*, 2026 U.S. Dist. LEXIS 217677, at *14 (quoting *Perez Bueno v. Janecka*, No. 25-cv-03376-CAS-BFM, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026)). Ordinarily, due process requires a hearing before the deprivation occurs. *Zinermon v. Burch*, 494 U.S. 113, 127, 132 (1990). Each factor weighs in Petitioner's favor.

52. The private interest is at its weightiest. The interest at stake is freedom from physical confinement, "the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Zadvydas*, 533 U.S. at 690. Here it is liberty the government already granted and on which Petitioner relied for more than three years (¶ 48). Detention has also taken him away from the medical care he needs. He is held without his CPAP machine, the sleep study scheduled for October 1, 2026 had to be re-referred from detention, and the facility physician has recorded concern about his episodes of apnea and waking gasping for air (¶¶ 30, 42). And detention impairs his ability to pursue his pending asylum application, whose individual hearing is no longer on calendar (¶¶ 25, 41).

53. The risk of erroneous deprivation is at its highest because ICE used no procedure at all. *Morrissey* sets the floor for revoking conditional liberty: written

notice of the claimed violation, disclosure of the evidence, an opportunity to be heard before a neutral decisionmaker, and a written statement of reasons. 408 U.S. at 489. Petitioner received none of them (¶ 39).

54. The facts show how real that risk was. ICE acted on an unadjudicated accusation that Petitioner denies (¶ 31). Within weeks, the District Attorney's Office reviewed the case and declined to file charges (¶ 32). Society has an interest in not having conditional liberty revoked "because of erroneous information or because of an erroneous evaluation of the need to revoke." *Morrissey*, 408 U.S. at 484. Civil immigration detention is justified only to prevent flight or danger. *Zadvydas*, 533 U.S. at 690. DHS's decision to release Petitioner in 2023 reflected its judgment that he presented neither, *Rasulov v. Santacruz*, No. 5:26-cv-01815-AJR, Dkt. 12 at 6 & n.1 (C.D. Cal. Apr. 22, 2026), and ICE's decision on September 28, 2026 to supervise him in the community with a GPS monitor, rather than detain him, reflected the same judgment after ICE learned of the arrest (¶ 35). Nothing changed before ICE detained him the next day (¶ 40).

55. The value of the missing safeguard is correspondingly high. Written notice and a hearing before a neutral decisionmaker, at which the government must justify detention, would have exposed that ICE was acting on an uncharged accusation and prevented this deprivation. And no post-deprivation hearing can cure the violation, for three independent reasons.

56. First, the deprivation was planned, not random. ICE told Petitioner to return on September 29, and arrested him when he appeared as directed (¶¶ 37, 38). Where a deprivation is predictable and pre-deprivation process is feasible, post-deprivation process does not satisfy due process. *Zinermon*, 494 U.S. at 136–39 (distinguishing *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hudson v. Palmer*, 468 U.S. 517 (1984)); *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). A hearing may be postponed only in extraordinary situations demanding

very prompt action, *Fuentes v. Shevin*, 407 U.S. 67, 82, 90–92 (1972), and an appointment ICE itself set for the next day is the opposite of one.

57. Second, liberty lost to confinement cannot be restored after the fact. Each day in Adelanto is a completed injury that no later hearing can undo. For Petitioner, each night without his CPAP machine adds a medical injury to the loss of liberty (¶ 42).

58. Third, the post-deprivation process available is inadequate. No custody hearing has been scheduled (¶ 43). Any bond hearing would place on Petitioner, from detention, the burden the government never carried (¶ 18). *See Bekhoev*, Dkt. 25 at 10 (citing *Juarez Fernandez v. Semaia*, No. CV 25-3412-SPG (MBK), 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026)).

59. The government's interest, by contrast, is minimal. Its legitimate interests are ensuring Petitioner's appearance and protecting the community. His release conditions served both for more than three years (¶¶ 23, 28). He appeared at ICE's office on two consecutive days when told to, the second time already wearing an ankle monitor and knowing that ICE was scrutinizing his case (¶¶ 34, 38). The government has no legitimate interest in detaining a person who presents neither a flight risk nor a danger. *Zadvydas*, 533 U.S. at 690–91.

60. The burden of additional process is slight. Petitioner was in ICE's office on two consecutive days that ICE chose. Custody hearings are routine and impose minimal cost. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025); *G.A.*, Dkt. 11 at 3–4.

61. All three *Mathews* factors favor Petitioner. His re-detention without notice or a pre-deprivation hearing violates the Due Process Clause.

## VII. SECOND CLAIM: PROCEDURAL DUE PROCESS — IMPOSITION OF GPS MONITORING WITHOUT NOTICE OR HEARING

62. Petitioner incorporates paragraphs 1 through 61.

63. Due process protects not only against re-incarceration, but also against the addition of custodial restraints to the terms on which a person was released. On September 28, 2026, ICE added continuous GPS monitoring to Petitioner's release without notice, without individualized findings, and without review by any neutral decisionmaker (¶¶ 35–36). Courts have held that this violates procedural due process. *Harrington v. Albarran*, No. 26-cv-01889-JST, Dkt. 9 at 1, 8–10 (N.D. Cal. Mar. 23, 2026); *M.A.M.G. v. Albarran*, No. 26-cv-06143-RFL, Dkt. 16 at 10–13 (N.D. Cal. Aug. 27, 2026); *Betancourt-Martinez*, 2026 U.S. Dist. LEXIS 217677, at *16–20 (noncitizen "was and is entitled to a pre-deprivation hearing before being placed on ISAP supervision"). This claim stands independently of the First Claim: even if ICE had used proper procedures to re-arrest Petitioner, it could not lawfully release him back onto a restraint that was itself imposed without process.

**A. GPS Monitoring Is an Additional Restraint on Protected Liberty**

64. Custody is not limited to physical confinement. It includes "restraints not shared by the public generally." *Jones v. Cunningham*, 371 U.S. 236, 240 (1963); *Munoz v. Smith*, 17 F.4th 1237, 1241 (9th Cir. 2021). Conditions that compel a person's presence at set times and places, or confine where he may go, are custodial. *Hensley v. Mun. Ct.*, 411 U.S. 345, 351 (1973); *Means v. Navajo Nation*, 432 F.3d 924, 928 (9th Cir. 2005); *Dow v. Cir. Ct. of the First Cir.*, 995 F.2d 922, 923 (9th Cir. 1993).

65. Applying these principles, courts in this Circuit and elsewhere have held that ICE's GPS ankle monitoring, combined with its reporting requirements, is custody. *Harrington*, Dkt. 9 at 6–8; *M.A.M.G.*, Dkt. 16 at 7–9 (collecting cases); *Batz Barreno v. Baltasar*, 816 F. Supp. 3d 1255, 1258 (D. Colo. 2026) ("Courts examining the issue have found that use of a GPS ankle monitor constitutes custody for the purposes of habeas corpus and due process."); *Orellana Juarez v. Moniz*, 788 F. Supp. 3d 61, 68 (D. Mass. 2025); *A.B.D. v. Wamsley*, No. 6:25-cv-02014-AA, 2026 WL 178306, at *7–8 (D. Or. Jan. 22, 2026); *Cruz v. Lyons*, 2025 WL 3443146,

at *3 (C.D. Cal. Dec. 1, 2025); *see Betancourt-Martinez*, 2026 U.S. Dist. LEXIS 217677, at *17–19 (collecting cases involving "24/7 GPS location tracking via an ankle monitor"). *Munoz* is not to the contrary. It held a monitor non-custodial because it did not limit the petitioner's physical movement, require him to go anywhere, or prevent him from going anywhere. 17 F.4th at 1245–46. ICE's monitor is attached to a person who must report in person when ICE directs, and it is enforced by the threat of re-arrest. *See Garro Pinchi v. Albarran*, No. 25-cv-10831, 2026 WL 1975598, at *4 (N.D. Cal. July 8, 2026) (distinguishing *Munoz* where supervision includes "a regular in-person check-in requirement").

66. Petitioner's restraint falls within that rule. ICE attached a GPS monitor to his ankle, on top of an in-person reporting obligation that ICE invoked on two consecutive days (¶¶ 23, 34–38). The public generally bears no such restraint. And it goes beyond the terms on which DHS released Petitioner in 2023, which did not include electronic monitoring (¶ 23). The Board's view that ICE-imposed terms are not "custody" for purposes of an immigration judge's regulatory jurisdiction, *Aguilar-Aquino*, 24 I&N Dec. at 752–53, does not answer the constitutional question. It confirms only that no administrative forum reviews those terms (¶ 18).

67. Petitioner's protected liberty interest extends to freedom from this added restraint. A person released from custody has a protected interest in remaining at liberty on the terms of his release. *Ortega*, 415 F. Supp. 3d at 969; *M.A.M.G.*, Dkt. 16 at 11. Restraints beyond those terms deprive Petitioner of the same liberty; they differ from detention in degree, not in kind. *See Harrington*, Dkt. 9 at 1, 8–9; *M.A.M.G.*, Dkt. 16 at 14 ("re-detention" includes "the addition of custodial constraints, including but not limited to electronic monitoring used in connection with ISAP monitoring and movement restrictions").

### B. ICE Imposed That Restraint Without Notice, Individualized Findings, or Neutral Review

68. ICE added GPS monitoring on its own authority, more than three years after DHS released Petitioner on conditions that did not include it. Petitioner received no notice, no opportunity to be heard, and no individualized finding that the restraint was needed to address a risk of flight or danger (¶ 36). ICE apparently acted solely on an arrest that Petitioner denies and that prosecutors declined to charge (¶¶ 31–32, 35). "[N]o neutral arbiter has considered the conditions imposed by ICE and deemed them necessary." *Harrington*, Dkt. 9 at 9.

69. ICE's statutory authority to set and modify release conditions does not relieve it of the Constitution's procedural requirements. *M.A.M.G.*, Dkt. 16 at 10 (citing *United States v. Rivera-Valdes*, 157 F.4th 978, 989 (9th Cir. 2025)); *Betancourt-Martinez*, 2026 U.S. Dist. LEXIS 217677, at *14. Whether process was due "depends on the facts underlying ICE's imposition of these custodial conditions." *M.A.M.G.*, Dkt. 16 at 10. Here those facts show no flight risk, no danger, and no material change in circumstances. Petitioner had lived in the community for more than three years, had no criminal record, and held a pending asylum application and federal work authorization (¶¶ 25–29).

### C. Under Mathews, Those Procedures Were Constitutionally Inadequate

70. "As other courts have found, all three *Mathews* factors support requiring a hearing before a noncitizen released from immigration detention can be subject to custody in the form of ankle monitoring and ISAP supervision." *Harrington*, Dkt. 9 at 9; *accord M.A.M.G.*, Dkt. 16 at 11; *Betancourt-Martinez*, 2026 U.S. Dist. LEXIS 217677, at *17–20. The same is true here.

71. The private interest is substantial. Freedom from physical restraint "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690; *see Garro Pinchi*, 2026 WL 1975598, at *5. Continuous GPS monitoring is a

significant intrusion: attaching a device to a person to track his movements is a search. *Grady v. North Carolina*, 575 U.S. 306, 309 (2015) (per curiam); *see Carpenter v. United States*, 585 U.S. 296 (2018).

72. The risk of erroneous deprivation is high because ICE used no procedure at all. *Harrington*, Dkt. 9 at 10. That risk "becomes overwhelmingly high when immigration officers act with unrestrained discretion . . . without an individualized showing of why detention is warranted or an effective process for noncitizens to challenge the exercise of such discretion." *Pichardo Medina v. Hermosilla*, No. 3:25-cv-02233-MC, 2025 WL 3712271, at *4 (D. Or. Dec. 22, 2025). The record confirms the risk. ICE imposed the restraint on the strength of an arrest, without hearing Petitioner's side, and prosecutors later declined to charge him (¶¶ 31–32, 35–36). A hearing at which ICE had to justify the restraint, and Petitioner could respond, would have had substantial value.

73. The government's interest is low. Its legitimate interests in Petitioner's appearance and the community's safety were already served by the conditions of his 2023 release and his reporting obligations, under which he lived in the community for more than three years (¶¶ 23, 28). A hearing would impose minimal burden, offset by the cost of the monitoring itself. *Harrington*, Dkt. 9 at 10; *Doe*, 787 F. Supp. 3d at 1094. And less restrictive conditions would fully serve the government's interest. *See Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017).

74. All three *Mathews* factors favor Petitioner. ICE's imposition of GPS monitoring without notice, individualized findings, or neutral review violated procedural due process. Absent written notice, a hearing before a neutral decisionmaker, and an individualized determination that a material change in circumstances since May 20, 2023 makes it necessary to address a risk of flight or danger, that restraint cannot lawfully be re-imposed as a condition of Petitioner's release.

## VIII. REMEDY

**A. Release on the 2023 Order of Release on Recognizance, Without GPS Monitoring**

75. Habeas relief aims to put the petitioner back where he would have been absent the violation. *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013). Here that is immediate release. A bond hearing held now would not cure the violation; it would ratify the unlawful arrest and shift to Petitioner, from inside a detention facility, the burden the government never carried. Courts in this District so hold. *Khushvaktov*, Dkt. 11 at 8–9 (release restores "the last uncontested status," and a post hoc bond hearing cannot cure an invalid re-detention; collecting cases); *G.A.*, Dkt. 11 at 4; *Bekhoev*, Dkt. 25 at 11.

76. The last uncontested status is the one set by the May 20, 2023 Order of Release on Recognizance: release on Petitioner's own recognizance, subject to the conditions listed in that order. Exs. A, B. That order did not impose electronic monitoring (¶ 23). ICE added the GPS monitor on September 28, 2026, without notice or review by any neutral decisionmaker (¶¶ 35–36). Where ICE has added custodial restraints without due process, the remedy is release on the conditions in effect before those restraints were added. *M.A.M.G.*, Dkt. 16 at 13–14; *Harrington*, Dkt. 9 at 12–13; *see Betancourt-Martinez*, 2026 U.S. Dist. LEXIS 217677, at *23 (ordering that petitioner "shall be subject only to the conditions outlined in" his original release document).

77. The Court has ample authority to set appropriate conditions of release. In habeas, the Court must "dispose of the matter as law and justice require." 28 U.S.C. § 2243. That authority includes ordering release on conditions tailored to the violation found. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968). For the reasons stated in Part VII, the appropriate conditions are those in the May 20, 2023 Order of Release on Recognizance and periodic reporting as directed by ICE, without electronic location monitoring.

78. To prevent recurrence, two forms of prospective relief are warranted. First, any future re-detention should be preceded by at least seven days' written notice stating the specific condition of release Petitioner allegedly violated and the supporting facts, and a pre-deprivation bond hearing before an immigration judge. At that hearing the government should bear the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or a danger and that no condition or combination of conditions could reasonably assure his appearance and the community's safety. *See Khushvaktov*, Dkt. 11 at 10, 12; *Isiev v. Santacruz*, No. 5:26-cv-1033-CV (DFM), Dkt. 14 at 5 (C.D. Cal. Apr. 1, 2026); *Betancourt-Martinez*, 2026 U.S. Dist. LEXIS 217677, at *23. Second, Respondents should not re-impose electronic location monitoring or any other custodial restraint beyond the conditions in the May 20, 2023 Order of Release on Recognizance unless they first provide written notice of the specific facts relied on and a hearing before a neutral decisionmaker, at which an individualized determination is made that a material change in circumstances since May 20, 2023 makes the restraint necessary to address a risk of flight or danger. *See M.A.M.G.*, Dkt. 16 at 14; *Harrington*, Dkt. 9 at 12–13; *Betancourt-Martinez*, 2026 U.S. Dist. LEXIS 217677, at *23. This relief does not bar future restraints regardless of circumstances. It requires only that any restraint be justified and reviewed before it is imposed.

**B. A Limited Permanent Injunction Is Warranted**

79. Habeas relief is not limited to discharge from custody; the Court may dispose of the matter "as law and justice require." 28 U.S.C. § 2243; *Carafas*, 391 U.S. at 239; *Hilton*, 481 U.S. at 775. A permanent injunction issues where the petitioner shows (1) irreparable injury; (2) that remedies at law are inadequate; (3) that the balance of hardships favors equitable relief; and (4) that the public interest would not be disserved. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Where the government opposes relief, the last two factors merge. *Garcia v. County of Alameda*, 150 F.4th 1224, 1234 (9th Cir. 2025).

80. Each factor is met. Petitioner has suffered irreparable injury through detention in violation of due process (¶¶ 38–43), and the risk of repetition is concrete. Release returns him to check-ins at the office where he was seized, which expose him to more risk of re-detention than the average person. *Matta v. Noem*, 2026 U.S. Dist. LEXIS 95844, at *5 (C.D. Cal. Apr. 29, 2026); *see Ramirez v. Mullin*, 2026 U.S. Dist. LEXIS 186848 (C.D. Cal. Aug. 17, 2026); *Carballo v. Semaia*, 824 F. Supp. 3d 1016, 1022 (C.D. Cal. 2026) (prospective relief remains available because petitioner "faces the imminent threat of re-arrest and detention"). That risk is heightened here, where ICE has already restrained and then re-arrested Petitioner on the strength of an accusation that prosecutors declined to charge (¶ 50). Damages cannot cure a deprivation of liberty, and the right to a pre-deprivation hearing can be enforced only before re-arrest. *Cu v. Marin*, 2026 U.S. Dist. LEXIS 113202, at *3 (C.D. Cal. May 21, 2026) (quoting *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1056 (N.D. Cal. 2021)). Requiring basic process before any future re-detention, or before any re-imposition of electronic monitoring, imposes little burden; the alternative forces Petitioner to suffer detention again and seek habeas relief anew. *Khushvaktov*, Dkt. 11 at 10–11.

81. The relief is narrow. It runs to Petitioner alone. It does not bar re-detention or new conditions; it requires only notice, a hearing, and an individualized justification first. *See United States v. Mendoza*, 464 U.S. 154, 162 (1984); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 767 (1994). Courts in this District have rejected the argument that prospective relief is inappropriate in immigration habeas. *Khushvaktov*, Dkt. 11 at 11 (citing *Huy Cu v. Marin*, 2026 WL 1427009, at *1–3 (C.D. Cal. May 21, 2026), and *Araujo-Contreras v. Janecka*, 2026 WL 1625368, at *1–4 (C.D. Cal. June 3, 2026)); *G.A.*, Dkt. 11 at 4; *Isiev*, Dkt. 14 at 5–6; *Betancourt-Martinez*, 2026 U.S. Dist. LEXIS 217677, at *11–12, 23–24.

## PRAYER FOR RELIEF

Petitioner respectfully asks the Court to:

(1) Assume jurisdiction over this matter;

(2) Order Respondents to show cause within three days why the writ should not be granted, and to identify the statutory provision they contend authorizes Petitioner's detention, state the specific condition of release he allegedly violated and the supporting facts, and lodge the arrest warrant, the Form I-213 for the September 29, 2026 arrest, any record of the decision to place Petitioner on GPS monitoring on September 28, 2026, Petitioner's Alternatives to Detention enrollment records, any information ICE received about the September 24, 2026 arrest, and any record of the decision to revoke his release, 28 U.S.C. § 2243;

(3) Declare that Respondents' re-detention of Petitioner without notice and a pre-deprivation hearing, and their imposition of GPS monitoring without notice, individualized findings, or neutral review, violate the Due Process Clause of the Fifth Amendment;

(4) Issue a writ of habeas corpus ordering Respondents to release Petitioner immediately, subject only to the conditions stated in the Order of Release on Recognizance dated May 20, 2023;

(5) Order that Petitioner's release shall not be conditioned on electronic location monitoring of any kind, subject to modification only in accordance with paragraph (8) below;

(6) Order Respondents to return Petitioner's documents and property upon release, and to file a notice of compliance within two business days of release;

(7) Permanently enjoin Respondents from re-detaining Petitioner without (a) at least seven days' written notice stating the specific condition of release he allegedly violated and the supporting facts, and (b) a pre-deprivation bond hearing before an immigration judge, at which the government must prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure his appearance and the community's safety;

(8) Permanently enjoin Respondents from re-imposing electronic location monitoring or any other custodial restraint beyond the conditions stated in the Order of Release on Recognizance dated May 20, 2023, unless Respondents first provide (a) written notice of the specific facts relied on, and (b) a hearing before a neutral decisionmaker at which an individualized determination is made that a material change in circumstances since May 20, 2023 makes the restraint necessary to address a risk of flight or danger to the community;

(9) Order Respondents not to transfer Petitioner outside the Central District of California while this petition is pending;

(10) Award reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(11) Grant any other relief the Court deems just and proper.

Dated: October 23, 2026

Respectfully submitted,

/s/ Magomed Gusein Gasanov
Magomed Gusein Gasanov
MGG Law, PC
Attorney for Petitioner

## VERIFICATION BY COUNSEL PURSUANT TO 28 U.S.C. § 2242

I, Magomed Gusein Gasanov, declare as follows:

1. I am an attorney admitted to practice in California and before this Court. I represent Petitioner Evans Kobla Agbemenya in this matter.

2. I submit this verification on Petitioner's behalf, as 28 U.S.C. § 2242 permits, because he is detained at the Adelanto ICE Processing Center. Obtaining his signature before filing would delay relief from ongoing detention.

3. I have read the foregoing Verified Petition for Writ of Habeas Corpus.

4. The factual statements in the Petition are based on (a) my review of the documents attached as Exhibits A through F; and (b) my communications with Petitioner and with persons acting on his behalf.

5. Exhibits A through F are true and correct copies of documents provided to me by Petitioner or by persons acting on his behalf, or printed from the Executive Office for Immigration Review's Automated Case Information system.

6. Based on that review and those communications, the facts stated in the Petition are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on October 23, 2026, at Beverly Hills, California.

/s/ Magomed Gusein Gasanov
Magomed Gusein Gasanov