**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EVANS KOBLA AGBEMENYA,<br>Petitioner,<br>v.<br>ERNESTO SANTACRUZ, JR., et al.,<br>Respondents. | NO. EDCV 26-6301-AS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

On October 23, 2026, Evans Kobla Agbemenya ("Petitioner"), an immigration detainee proceeding through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition") against: Ernesto Santacruz, Jr., Los Angeles Field Office Director for United States Immigration and Customs Enforcement ("ICE"); David J. Venturella, Acting ICE Director; Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); United States Attorney General Todd Blanche; and the Warden of the Adelanto ICE Processing Center (collectively "Respondents"). (Docket ("Dkt.") No. 1). The Petition

alleges Petitioner is being detained and had GPS monitoring imposed on him in violation of due process of law. (Petition, ¶¶ 44-81). Petitioner seeks, among other things, his immediate release from custody without such release being conditioned on electronic location monitoring. (Petition at 22).

On November 2, 2026, Respondents filed an Answer to the Petition. (Dkt. No. 8). On November 4, 2026, Petitioner filed a Reply. (Dkt. No. 10).

Additionally, on November 3, 2026, Petitioner filed an Ex Parte Application for a Temporary Restraining Order ("Ex Parte Application") seeking his immediate release from custody with the Declaration of Magomed Gusein Gasanov with exhibit. (Dkt. No. 9). On November 4, 2026, Respondents filed an Opposition to the Ex Parte Application, and Petitioner filed a Reply and Request for Ruling on the Ex Parte Application ("Request for Ruling"). (Dkt. Nos. 11-12). On November 5, 2026, Respondents filed a Supplemental Brief in Opposition to the Ex Parte Application with the Declaration of Irving Palacios with exhibits. (Dkt. No. 13). On November 6, 2026, Petitioner filed a Request for Leave to File Supplemental Physician Declarations and a Supplemental Brief in support of the Ex Parte Application with the Declarations of Magomed Gusein Gasanov, Evgeny Shukhman and Aleksandra Savitskaya. (Dkt. No. 14).

The parties have consented to proceed before the undersigned Magistrate Judge in this matter. (See Dkt. Nos. 3, 7). For the reasons discussed below, the Petition is GRANTED, the Ex Parte

Application and related Requests are DENIED as moot, and Respondents are ordered to immediately release Petitioner from custody.

## II.

## BACKGROUND

Petitioner is a Ghanaian citizen who entered the United States in May 2023 and surrendered to immigration officers. (Petition, ¶¶ 1, 10, 20-21). On May 20, 2023, DHS served Petitioner with a Notice to Appear, charging him with removability under Immigration and Nationality Act § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled. (Petition, ¶¶ 1, 24; Answer, Exh. B). That same day, DHS released Petitioner on his own recognizance. (Petition, ¶¶ 1, 22-23 & Exhs. A-B).

Petitioner subsequently applied for asylum, and that application remains pending. (Petition, ¶¶ 1, 25). On June 25, 2024, United States Citizenship and Immigration Services approved Petitioner's application for employment authorization through June 2029. (Petition, ¶¶ 1, 26 & Exh. C).

On September 24, 2026, following a dispute with his girlfriend, Petitioner was arrested, purportedly for infliction of a corporal injury on a spouse or cohabitant in violation of California Penal Code

("P.C.") § 273.5(a).[1] (Petition, ¶¶ 2, 31; Answer, Exh. A). Petitioner denied the allegations. (Petition, ¶¶ 2, 31). On October 14, 2026, an officer from the Los Angeles Police Department's Olympic Division informed Petitioner's attorney that the Los Angeles County District Attorney's Office had reviewed the case and declined to file charges against Petitioner. (Petition, ¶¶ 2, 32-33 & Exh. D).

On September 28, 2026, without providing Petitioner with written notice, a statement of reasons or a hearing, ICE fitted Petitioner with a GPS ankle monitor and told him to return the next day. (Petition, ¶¶ 3, 34-37).

On September 29, 2026, when Petitioner returned as directed, ICE detained Petitioner, again without providing him with written notice, a statement of reasons or a hearing. (Petition, ¶¶ 3, 38-40). Petitioner remains in ICE custody without the CPAP machine he uses to treat his chronic obstructive sleep apnea. (Petition, ¶¶ 3, 5, 10, 30, 41-42).

## III.

## DISCUSSION

[1] P.C. § 273.5(a) makes it a felony to "willfully inflict[] corporal injury resulting in a traumatic condition" upon a qualifying victim such as a spouse or cohabitant. P.C. § 273.5(a-b). A "traumatic condition" for purposes of P.C. § 273.5 is defined as "a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, ***whether of a minor or serious nature***, caused by a physical force." P.C. § 273.5(d) (emphasis added).

Petitioner contends, among other things, that he was re-detained without notice or a hearing in violation of due process of law. (Petition, ¶¶ 44-61). Respondents disagree, arguing Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E) due to his P.C. § 273.5(a) arrest. (Answer at 2-4).

**A. <u>Petitioner is not Subject to Mandatory Detention Under § 1226(c)</u>**

Section 1226(c) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 289 (2018). "Prior to its January 2025 amendment, § 1226(c) mandated detention for noncitizens who had been convicted of certain enumerated offenses, sentenced to at least one year in prison for certain enumerated offenses, or who had engaged in terrorist activities." <u>Yagual v. Semaia</u>, 2026 WL 1865876, *2 (C.D. Cal. 2026) (citing 8 U.S.C. § 1226(c)(1)(A-D)). In January 2025, the Laken Riley Act amended Section 1226(c) to require mandatory detention for "any alien" who "is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title" and "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]"[2] 8 U.S.C. § 1226(c)(1)(E)(i-ii); <u>Yagual</u>, 2026 WL 1865876 at

[2] "For purposes of paragraph (1)(E), the terms 'burglary', 'theft', 'larceny', 'shoplifting', 'assault of a law enforcement officer', and 'serious bodily injury' have the meanings given such terms in the jurisdiction in which the acts occurred." 8 U.S.C. § 1226(c)(2).

*2; Guerrero v. Warden of Adelanto ICE Processing Ctr., 2026 WL 3322088, *5 (C.D. Cal. 2026).

Respondents argue Petitioner's arrest subjects him to mandatory detention under Section 1226(c)(1)(E)(ii). (Answer at 2-4). The Court disagrees. "Congress' use of a verb tense is significant in construing statutes." United States v. Wilson, 503 U.S. 329, 333 (1992); see also Stanley v. City of Sanford, Fla., 606 U.S. 46, 52 (2025) ("'[T]o ascertain a statute's temporal reach,' this Court has 'frequently looked to Congress' choice of verb tense.'" (quoting Carr v. United States, 560 U.S. 438, 448 (2010))). "And the Laken Riley Act's use of the present tense is conspicuous: it extends mandatory detention to one who 'is' arrested and 'is' charged." Martinez v. Mullin, 2026 WL 2111747, *4 (C.D. Cal. 2026); see also Kong v. Johnson, 2026 WL 3315245, *4 (C.D. Cal. 2026) ("[T]he conspicuous use of the present tense in Section 1226(c)(1)(E)(ii) supports the conclusion that it is only applicable to qualifying non-citizens who are presently under arrest."); Beorkyubeyukyan v. Lyons, 2026 WL 3182207, *3 (C.D. Cal. 2026) ("The statute's use of the present tense indicates that it . . . only [applies] to a person who presently 'is arrested' for or 'is charged' with [an enumerated crime]."); Castellon v. Dep't of Homeland Sec., 2026 WL 2434858, *3 (C.D. Cal. 2026) ("[T]o avoid 'serious due process concerns, . . . courts have construed the Laken Riley Act to apply only where an individual is currently charged with or arrested for the enumerated crimes, and conclud[ed] [that] mandatory detention is not required when charges are never filed, or where an individual has been acquitted.'" (citations omitted)). But here, while Petitioner

***was*** arrested, the Los Angeles County District Attorney's Office reviewed the case and declined to file charges against Petitioner. (Petition, ¶¶ 2, 32-33 & Exh. D). Therefore, setting aside other issues, since Petitioner is not presently under arrest or charged with a crime, and there is no evidence to suggest Petitioner has been "convicted of, admits having committed, or admits committing" any crime enumerated in Section 1226(c)(1)(E)(ii), Petitioner is not subject to mandatory detention under the Laken Riley Act.[3] Kong, 2026 WL 3315245, *3-5; Martinez, 2026 WL 2111747 at *5-6; Osorio v. Albarran, 2026 WL 2741855, *3-4 (N.D. Cal. 2026); see also Guerrero, 2026 WL 3322088 at *5 ("If criminal authorities chose not to charge [the petitioner] or the charge was dismissed, he would no longer be subject to mandatory immigration detention under § 1226(c)."); Beorkyubeyukyan, 2026 WL 3182207 at *3 ("Absent evidence that charges are pending against Petitioner, Respondents have not shown that Section 1226(c)(1) applies

---

[3] Respondents have provided the Court with no details about the circumstances leading to Petitioner's arrest, and several courts have held that a P.C. § 273.5(a) charge does not necessarily fall within Section 1226(c)(1)(E)(ii). See, e.g., Guerrero, 2026 WL 3322088 at *6 ("Respondents do not cite any authority for the proposition that an arrest or charge under California Penal Code § 273.5(a) necessarily or always qualifies as [a "crime that results in death or seriously bodily injury to another person" under § 1226(c)(l)(E)(ii)]. Based on the statutory definition, it appears possible to inflict a 'traumatic condition' that does not constitute 'serious bodily injury.'" (citing P.C. § 273. 5(a, d)); M.V.F. v. Santacruz, 2025 WL 3691419, *8 (C. D. Cal. 2025) ("Petitioner's arrest [for allegedly violating P.C. § 273.5(a)] did not implicate the Laken Riley Act, as the charged (and now dismissed) crime did not constitute the essential elements of any crime that could result in serious bodily injury to another. Put another way, because there is no indication that Petitioner's arrest was necessarily for a crime that caused *serious* bodily injury, the Laken Riley Act does not control." (italics in original)). Having already concluded the Laken Riley Act is inapplicable to Petitioner, the Court need not further address this issue.

to Petitioner."); Gutierrez-Paniagua v. Mullin, 2026 WL 1747297, *3-4 (S.D. Cal. 2026) (While the Petitioner was arrested, "[f]rom the record, it appears as though the Petitioner was not formally charged with [a crime]. Thus, Petitioner is not subject to mandatory detention under § 1226(c)."); Flores Martines v. Mattos, 2026 WL 1362529, *6 (D. Nev. 2026) ("Where, as here, criminal charges were never brought, the Laken Riley Act no longer applies.").

**B. Petitioner is Entitled to Relief on His Re-Detention Claim**

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017); Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693; Hernandez, 872 F.3d at 990; see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting Reno v. Flores, 507 U.S. 292, 306 (1993))). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690; Hernandez, 872 F.3d at 990. "'Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.'" Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025) (quoting Pinchi

v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."), appeal dismissed by, 2021 WL 1590193 (9th Cir. 2021).

Petitioner contends, among other things, that he was denied due process of law when ICE re-detained him without notice and a pre-deprivation hearing. (Petition, ¶¶ 44-61).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). Courts examine procedural due process claims in "two steps." Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989); Vasquez v. Rackauckas, 734 F.3d 1025, 1042 (9th Cir. 2013). First, courts consider whether the petitioner was deprived of a constitutionally protected liberty interest, and second "whether that deprivation was accompanied by sufficient procedural protections." Johnson v. Ryan, 55 F.4th 1167, 1179 (9th Cir. 2022); Thompson, 490 U.S. at 460.

"Petitioner has a substantial private interest in remaining out of immigration custody. As a noncitizen residing within the United States, Petitioner is entitled to constitutional due process." Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 878 (C.D. Cal. 2026); Martinez v. Noem, 821 F. Supp. 3d 1183, 1190 (C.D. Cal. 2026). Moreover, it is undisputed that Petitioner was released from custody

into the United States and remained free for over three years before ICE re-detained him. (Petition, ¶¶ 1, 22-23; & Exhs. A-B). "Petitioner's release . . . gave rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government.'" Martinez, 821 F. Supp. 3d at 1190 (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)); Medrano-Rocha, 817 F. Supp. 3d at 878; see also Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); M.R. v. Chestnut, 827 F. Supp. 3d 1348, 1355 (E.D. Cal. 2026) ("Petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest."); Chavarriaga Rojas v. Albarran, 826 F. Supp. 3d 1155, 1165 (N.D. Cal. 2025) ("Courts in this district consistently hold that when a noncitizen is released pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody."); Pinchi, 792 F. Supp. 3d at 1032 ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody.").

Petitioner's release into the United States also created "an implicit promise" liberty would be revoked only for failing to comply with the conditions of release. Morrissey v. Brewer, 408 U.S. 471, 482 (1972); Martinez, 821 F. Supp. 3d at 1191; Medrano-Rocha, 817 F. Supp. 3d at 878; Chavarriaga Rojas, 826 F. Supp. 3d at 1165. Thus, "Petitioner establishes a significant liberty interest in remaining out

of immigration custody." Martinez, 821 F. Supp. 3d at 1191; Medrano-Rocha, 817 F. Supp. 3d at 878; Pinchi, 792 F. Supp. 3d at 1032-33.

Having determined Petitioner has a protected liberty interest in remaining out of custody, the Court applies the three-part test established in Mathews to determine whether the government's procedures were constitutionally sufficient. Under Mathews, courts consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335; Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022); Hernandez, 872 F.3d at 993.

As to the first factor, as explained, Petitioner has a significant interest in remaining out of custody given his release into the United States and the significant time he has spent out of custody. Morrissey, 408 U.S. at 482; Martinez, 821 F. Supp. 3d at 1190-91; Medrano-Rocha, 817 F. Supp. 3d at 878; Pinchi, 792 F. Supp. 3d at 1032-35; see also Hernandez, 872 F.3d at 993 ("As to the first [Mathews] factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due

Process Clause.' That is beyond dispute." (citation omitted)); Meneses, 811 F. Supp. 3d at 1163 ("Petitioner has a substantial private interest in remaining in his home, providing for his family, and participating in the community, all out of custody."); Doe v. Becerra, 787 F. Supp. 3d 1083, 1093-94 (E.D. Cal. 2025) ("It cannot be gainsaid that Petitioner has a substantial private interest in maintaining his out-of-custody status. . . . The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Accordingly, the first Mathews factor favors Petitioner.

As to the second factor, it is undisputed that, despite his protected liberty interest, Petitioner was detained without notice and a pre-detention hearing. (Petition, ¶¶ 3, 38-40). Under these circumstances, there is a high risk of erroneous deprivation of liberty. See Martinez, 821 F. Supp. 3d at 1191 ("[T]he risk of erroneous deprivation is significant without a pre-detention hearing."); Meneses, 811 F. Supp. 3d at 1164 ("There is an unacceptably high risk that the government would erroneously deprive Petitioner of his liberty interest absent a pre-detention hearing."); Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025) ("The government's unilateral determination that re-detention is warranted is far less likely to be correct than the decision reached by a neutral adjudicator in a bond hearing."); Pinchi, 792 F. Supp. 3d at 1035 ("[I]t is clear that there is a significant risk that the government will erroneously deprive Ms. Garro of that liberty interest if it does not provide her with a pre-detention hearing. Where, as here, '[the petitioner] has

not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor Ms. Garro Pinchi has had an opportunity to determine whether there is any valid basis for her detention."); Torres Ferrera v. Scott, 2026 WL 776145, *5 (W.D. Wash. 2026) ("Where a person with a protected liberty interest is provided no process at all to contest its deprivation, due process cannot be satisfied. Put differently, no process can never equal due process. The risk of erroneous deprivation will always be unacceptably high where no process is provided. . . ."); G.S. v. Hermosillo, 2026 WL 179962, *3 (W.D. Wash. 2026) ("the absence of pre-deprivation procedures created an unacceptably high risk of erroneous deprivation"). Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; Martinez, 821 F. Supp. 3d at 1191. Yet, Petitioner's initial release from ICE custody "reflected a determination by the government that [he] was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless [he] no longer meets those criteria." Pinchi, 792 F. Supp. 3d at 1034; see also Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("The federal government sometimes releases noncitizens on bond or parole while their removal proceedings are pending. Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), affirmed by, 905 F.3d 1137 (9th Cir. 2018); Venega-Maltez v. Semaia, 2026 WL 846035, *7 (C.D. Cal. 2026) ("Petitioner was released upon his entry into the United States, which reflected a finding that he was not a flight risk or danger to

the community.”). Accordingly, the second Mathews factor favors Petitioner.

Regarding the third factor, “the government clearly has a strong interest in preventing aliens from ‘remain[ing] in the United States in violation of our law.’” Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore v. Kim, 538 U.S. 510, 518 (2003)). “However, the key government interest at stake here ‘is not the continued detention of Petitioner, but the government’s ability to detain him without [notice and a pre-detention] hearing[,]’”[4] Singh v. Semaia, 2026 WL 1611896, *5 (C.D. Cal. 2026) (quoting Zagal-Alcaraz v. ICE Field Office, 2020 WL 1862254, *7 (D. Or.), report and recommendation adopted by, 2020 WL 1855189 (D. Or. 2020)); see also Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019) (“[T]he Court notes that the governmental issue at stake in this motion is the ability to detain Petitioner without providing him with another bond hearing, not whether the government may continue to detain him.” (italics omitted)), appeal dismissed by, 2019 WL 4855033 (9th Cir. 2019), and as many courts have recognized, “there is no meaningful countervailing government interest that supports detaining previously [released] noncitizens like [P]etitioner without a pre-detention hearing.” Meneses, 811 F. Supp. 3d at 1164; Martinez, 821 F. Supp. 3d at 1192; see also Pinchi, 792 F. Supp. 3d at 1036 (“[T]here is no countervailing government interest — the third and final *Mathews* factor — that supports conducting a bond hearing only

---

[4] “[D]etention for its own sake is not a legitimate governmental interest.” Claros v. Albarran, 811 F. Supp. 3d 1062, 1070 (N.D. Cal. 2025); see also Pinchi, 792 F. Supp. 3d at 1036 (“Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.”).

after Ms. Garro Pinchi has been detained, rather than in advance thereof."); Doe, 787 F. Supp. 3d at 1094 ("The final *Mathews* factor is simple as the Government's interest in placing Petitioner in detention without a hearing is low."); Ortega, 415 F. Supp. 3d at 970 ("[T]he government's interest in re-arresting Ortega without a hearing before an IJ is low."); Van Nguyen v. Bondi, 818 F. Supp. 3d 1235, 1242 (W.D. Wash. 2026) ("[T]he government's interest in arresting and detaining a noncitizen without a hearing is low where the noncitizen was already released because the government had been persuaded he would not pose a flight risk or a danger to the community."). Indeed, "[t]he efficiency burden entailed by a bond hearing would be minimal. As other courts have observed, bond hearings require little expenditure of resources." Duong, 800 F. Supp. 3d at 1040; see also Martinez, 821 F. Supp. 3d at 1192 ("[C]ustody hearings in immigration court are 'routine' and impose only a 'minimal' cost." (citations omitted)). Thus, the third Mathews factor favors Petitioner.

Therefore, applying the Mathews factors, Petitioner was denied due process of law when he was re-detained without notice and a pre-detention hearing. See Zinermon v. Burch, 494 U.S. 113, 127 (1990) (Applying Mathews, "the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before

he is deprived of any significant [liberty or] property interest.'" (citations and italics omitted)); Ordonez v. Mullin, 2026 WL 1630411, *4 (C.D. Cal. 2026) ("Because each of the *Mathews* factors favors Petitioners' bid for pre-deprivation process, the Court finds that Petitioners' detention — which was accompanied by *no* process — violates the Due Process Clause." (italics in original)). And "'[b]ecause Petitioner's deprivation of liberty without due process has been unlawful from its inception, [his] immediate release is required.'" Hakobyan v. Semaia, 2026 WL 2985380, *4 (C.D. Cal. 2026) (quoting Torres Ferrera, 2026 WL 776145 at *6); see also Martinez, 821 F. Supp. 3d at 1196 ("Petitioner's release from custody is the appropriate remedy" since among other things, "Petitioner continues to suffer irreparable harm so long as she remains unlawfully re-detained"); Kositsin v. Santacruz, 2026 WL 2866467, *4 (C.D. Cal. 2026) ("Petitioner has a strong interest in remaining free from confinement, there is a significant risk that Respondents' lack of constitutionally adequate procedures has resulted in his unnecessary detention, and any government interest in refusing to provide such process is minimal. The Court therefore concludes that Petitioner's detention without adequate pre-deprivation process violated due process" and he is entitled to be released from custody); Movsesyan v. Bondi, 2026 WL 712824, *2-5 (C.D. Cal. 2026) (ordering "Petitioner's immediate release, and prevent[ing] Respondents from re-detaining Petitioner without notice and an opportunity to be heard" when Petitioner had "shown that his re-detention without any notice or an opportunity to be heard violates procedural due process"). In other words, given the violation of Petitioner's due process rights, "'Petitioner's release is necessary to return him to the status quo[,]'" which is "'the last

uncontested status which preceded the pending controversy.'" R.N.G. v. Semaia, 838 F. Supp. 3d 1035, 1048 (C.D. Cal. 2026) (citations omitted); Martinez, 821 F. Supp. 3d at 1183; see also Orozco-Salazar v. Warden Desert View Facility, Adelanto ICE Processing Ctr., 2026 WL 2497334, *3 (C.D. Cal. 2026) ("Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights."); Ovikian v. Noem, 2026 WL 391431, *4 (C.D. Cal. 2026) ("Providing Petitioner an interview *ex post* facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. . . . The only appropriate remedy is to release Petitioner and enjoin his re-detention, unless and until he is provided due process measures with respect to the revocation of his [Order of Supervision]." (italics in original)). Therefore, Petitioner "should be released from custody on whatever conditions may have been previously imposed" prior to the violation of his due process rights.[5] Bolivar v. Warden, Desert View Facility, Adelanto ICE Processing Ctr., 2026 WL 3259804, *6 (C.D. Cal. 2026); Lopez Zacatares v. Mullin, 2026

---

[5] In this case, that means any conditions Petitioner was subject to prior to his September 24, 2026 arrest - the event that triggered the due process violation discussed herein. (See, e.g., Petition, ¶ 3). Having so concluded, the Court need not address the remaining arguments the parties make, including Petitioner's contention that ICE also violated his due process rights by fitting him with a GPS ankle monitor the day before re-detaining him, cf. Harrington v . Albarran, __ F. Supp. 3d __, 2026 WL 800113, *6 (N.D. Cal. 2026) ("As other courts have found, all three *Mathews* factors support requiring a hearing before a noncitizen released from immigration detention can be subject to custody in the form of ankle monitoring and ISAP supervision."), and Respondents' assertion that Petitioner failed to exhaust administrative remedies relating to his ankle monitor claim.

WL 3148087, *5 (C.D. Cal. 2026); Rodriguez Cabrera v. Mattos, 808 F. Supp. 3d 1159, 1183 (D. Nev. 2025); see also Ordonez, 2026 WL 1630411 at *4 ("As has been found in countless similar cases in this Circuit, the appropriate remedy . . . is to order Petitioners placed in the position they would have been absent the due process violation — that is, they should be released from custody on the conditions that were initially imposed.").

**IV.**

**ORDER**

Accordingly, for the reasons discussed herein, the Petition (Dkt. No. 1) is **GRANTED**. Respondents shall immediately release Petitioner (A# 245-021-088) from immigration custody subject to the conditions of Petitioner's most recent order of supervision predating Petitioner's September 24, 2026 arrest and without the imposition of any new or further restraints. Respondents are also enjoined from re-detaining Petitioner or subjecting him to GPS monitoring absent strict compliance with the requirements of due process and all applicable statutes and regulations.

Having so concluded, Petitioner's Ex Parte Application (Dkt. No. 9), Request for Ruling (Dkt. No. 12) and Request for Leave to File Supplemental Physician Declarations (Dkt. No. 14) are **DENIED** as moot.

\\

\\

\\

\\

Additionally, the Court ORDERS that Respondents shall file a declaration by no later than 5:00 p.m. on November 16, 2026, confirming Petitioner has been released from custody. IT IS SO ORDERED.

DATED: November 12, 2026

/ s / Sagar
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE